## S08A0284. LAMPLEY v. THE STATE.
(663 SE2d 184)

HUNSTEIN, Presiding Justice.

Appellant Derrick Lampley was convicted of felony murder and aggravated assault in connection with the stabbing death of Shawn Evans. The trial court denied Lampley's motion for new trial[1] and he appeals.

1. The evidence authorized the jury to find that Lampley had loaned his girlfriend's car to the victim in exchange for drugs. After unsuccessfully attempting to retrieve the car from the victim, Lampley called his brother Montrell Cox and asked for a ride to search for the vehicle. When they came upon the victim standing by the side of the road, Lampley told Cox to stop. Lampley got out, gave chase, and caught up with the victim. The two scuffled while Lampley repeatedly asked where his girlfriend's car was. They fell to the ground and Lampley knelt over the victim, stabbing him repeatedly with a knife. Lampley got back in Cox's car and Cox drove away, dropping Lampley off nearby, where he fled on foot.

Responding to a reported homicide, police found the deceased victim lying on his back in the street with multiple stab wounds. A bystander at the scene provided the make, model and tag number of a vehicle that had been observed in the area, and police determined that the vehicle belonged to Cox. Cox gave several statements to police, ultimately implicating Lampley, and testified at trial. Viewed in the light most favorable to the verdict, we conclude that the evidence was sufficient for a rational trier of fact to find Lampley guilty beyond a reasonable doubt of felony murder and aggravated assault with a deadly weapon. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Lampley contends that his trial counsel was ineffective in

---

[1] The crimes occurred on April 15, 2002. Lampley was indicted in Fulton County on August 6, 2002, and charged with malice murder, felony murder based on aggravated assault, and aggravated assault with a deadly weapon. On June 19, 2003, a jury found Lampley guilty of the latter two charges. The trial court merged the felony murder and aggravated assault convictions, sentencing Lampley to life imprisonment in an order entered June 23, 2003. Lampley's motion for new trial was filed on July 18, 2003, amended on September 14, 2005 and February 22, 2006, and denied on August 1, 2006; his notice of appeal was timely filed. The appeal was docketed in this Court on October 19, 2007 and oral argument was heard on February 12, 2008.

failing to object and move for a mistrial in response to certain remarks made by the State during its closing argument. To succeed on a claim of ineffective assistance of counsel, he must show both that his counsel's performance was deficient and that, but for the deficient performance, there is a reasonable probability the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). For the reasons that follow, we hold that Lampley has failed to establish that his counsel rendered ineffective assistance during the State's closing.

(a) Lampley characterizes the following argument by the prosecutor as an improper comment on his failure to testify:

> You may not have every question answered, because the only person that can answer all of the questions is the man sitting there at that table, Derrick Lampley; the eyewitness, Montrell Cox; and the deceased victim. Because only those three persons were there and only those three persons know what happened.

In order for these remarks to constitute prosecutorial misconduct, there must be "a finding that the prosecutor's manifest intent was to comment on [Lampley's] failure to testify or that the jury would naturally and necessarily understand the remarks as a comment on [Lampley's] silence. [Cit.]" *Wellons v. State*, 266 Ga. 77, 86 (10) (463 SE2d 868) (1995). Here, the remarks at issue "were but a small part of a summary of the evidence best understood as conceding the ambiguities therein and were unlikely to be interpreted as comments on [Lampley's] failure to testify." Id. (finding no error in prosecutor's remarks during closing that " 'only two people know what went on in that apartment,' " and " 'there's only two people who can tell us how long that horror lasted' "). Thus, the failure of Lampley's trial counsel to object to these remarks or move for a mistrial does not constitute deficient performance.

(b) Lampley characterizes the following argument by the prosecutor as an improper comment on his pre-arrest silence:

> Does he go back to see if [the victim] . . . [i]s okay? Does he call the police and say: there has been an incident here. This guy had my car. He wouldn't give it back to me, and this is what I had to do. I chased him down and I tried to get my car and it got out of hand. No. He doesn't do any of that.

This argument does constitute an improper comment on Lampley's silence or failure to come forward in violation of *Mallory v. State*, 261

Ga. 625 (5) (409 SE2d 839) (1991), overruled on other grounds, see *Clark v. State*, 271 Ga. 6 (5) (515 SE2d 155) (1999), and thus Lampley's counsel was deficient in failing to object. Given the weight of the evidence against Lampley, however, he has failed to show that, absent this deficient performance, there is a reasonable probability the outcome of his trial would have been different. See *Jackson v. State*, 282 Ga. 494, 497 (2) (651 SE2d 702) (2007).

3. Lampley maintains that the trial court erred by failing to excuse for cause prospective juror Mangum, who indicated that she would believe a police officer over other witnesses at trial,[2] necessitating his use of a peremptory strike. After jury selection, the record was perfected regarding the challenges for cause that had been denied, and reflects that the trial court improperly relied on Lampley's failure to exhaust all of his peremptory challenges. However,

> [b]ecause a trial court is not required to strike for cause a prospective juror who simply expresses reservations about her ability to set aside her personal experiences; because a determination of bias is based on observations concerning a potential juror's demeanor and credibility, which are matters peculiarly in the trial court's province; and because [Mangum] never stated a fixed and definite opinion of [Lampley's] guilt, we conclude that the trial court did not abuse its discretion in failing to strike [Mangum] for cause.

(Punctuation and footnotes omitted.) *Byrd v. State*, 277 Ga. 554, 556 (2) (a) (592 SE2d 421) (2004).

4. Lampley argues that the trial court erred by allowing the State to elicit testimony concerning blood found on Lampley's shirt and watch, in violation of a defense motion in limine granted to prohibit the State from presenting any evidence that Lampley was shot near the scene of the crime in another incident soon after the events at issue occurred. A GBI forensic biologist testified that she conducted chemical and serological tests on Lampley's shirt that revealed the presence of human blood. A second GBI forensic biologist testified that Lampley's watch also tested positive for the presence of blood and that DNA on both the shirt and watch matched

---

[2] The extent of voir dire on this issue consists of the following exchange between defense counsel and Mangum:

Q: Is it that you just believe – tell me why you believe that.
A: Well, my dad was with the FBI for 35 years so I was just kind of brought up that they're sworn to uphold the law and I just believe in them.
Q: Okay.
A: I mean, certainly there are exceptions but fundamentally, that is how I believe.

that of Lampley. While this testimony did not violate the express terms of the motion in limine because it did not directly reference the shooting, Lampley claims that it violated the motion indirectly because it created the impression that the blood came from a struggle with the victim[3] and he could only counter that impression by introducing irrelevant and unduly prejudicial evidence of the shooting. Any misperception regarding the reason for the presence of Lampley's blood on his possessions was created by the restrictions put in place at his request, however, and "[a] party cannot complain about errors he helped induce. [Cit.]" *Stinchcomb v. State*, 280 Ga. 170, 173 (4) (626 SE2d 88) (2006). Moreover, the testimony ruled out the presence of the victim's blood, which benefitted Lampley.[4] Even assuming, arguendo, that the admission of the testimony was error, it is highly probable that it did not contribute to the verdict, given the weight of the evidence implicating Lampley in the victim's death.[5] See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

*Judgment affirmed. All the Justices concur, except Melton, J., who concurs specially.*

MELTON, Justice, concurring specially.

The determination of harmless error [with respect to comments on a defendant's pre-arrest silence] must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.

(Citation omitted.) *Hill v. State*, 250 Ga. 277, 283 (4) (a) (295 SE2d 518) (1982). With this standard in mind, I must agree that the harmless error analysis in Division 2 (b) of the majority opinion is appropriate in light of this Court's holding in *Jackson v. State*, 282 Ga. 494, 497 (2) (651 SE2d 702) (2007) (despite prosecutor's extensive and inappropriate cross-examination and closing argument regarding defendant's pre-arrest silence, and despite defendant's claim of self-defense, no reasonable likelihood existed that trial result would have been different in light of eyewitness and forensic

---

[3] We note that the jury was never given any information regarding the circumstances under which the shirt was recovered from Lampley. The lead detective testified that the watch was recovered when Lampley was arrested, and that the arrest warrant was obtained almost two months after the crimes were committed.

[4] Defense counsel reiterated both on cross-examination of the DNA expert and during closing that the blood on these two items was that of Lampley, not the victim.

[5] Accordingly, Lampley's claim that his trial counsel was ineffective in failing to properly object and move for a mistrial after this testimony must fail.

evidence connecting defendant to crime). I write separately, however, to state my continued concern that harmless error has become an escape route for any error created by the State's inappropriate comments on a defendant's pre-arrest silence, regardless of the proportional strength of the evidence presented of a defendant's guilt. See id. at 501 (proposing that " 'overwhelming evidence' no longer depends upon the amount and quality of evidence of guilt adduced at trial. Instead, 'overwhelming evidence' has become the catch phrase that excuses all error") (Hunstein, P. J., dissenting) (citation omitted).

Here, the State argued,

[d]oes [Lampley] go back to see if [the victim] . . . [i]s okay? Does he call the police and say: there has been an incident here. This guy had my car. He wouldn't give it back to me, and this is what I had to do. I chased him down and I tried to get my car and it got out of hand. No. He doesn't do any of that.

As the majority correctly concludes, this argument "constitute[s] an improper comment on Lampley's silence or failure to come forward." Indeed, the State's entire argument implies that Lampley deliberately stabbed the victim and left him for dead (considering the fact that he did not "go back to see if [the victim] . . . was okay"), and that he did not stab the victim in any way that could have been construed as being in self-defense or in any manner otherwise justified by law (because Lampley did not tell the police that "this is what [he] had to do . . . [when things] got out of hand").

However, the evidence to counterbalance the harm created by the State's argument consisted almost entirely of the testimony from Montrell Cox, who gave several inconsistent and conflicting stories to the police. There was no physical evidence recovered by police that connected Lampley to the crime, such as the murder weapon or any blood evidence from the crime scene or Cox's car that would have pointed to Lampley's involvement. In fact, the only blood evidence relating to Lampley that was referenced at trial was completely unrelated to the stabbing of the victim, as it consisted of Lampley's own blood appearing on his shirt and his watch from an unrelated shooting. The State even appears to give a nod to the relatively weak nature of the overall evidence, by conceding during its closing argument that the jury "may not have every question answered . . . [b]ecause only [Lampley, the deceased victim, and Cox] were there [the night of the murder] and only those three persons know what happened."

In light of the harm created by the State's improper argument,

and in light of the questionable strength of the evidence presented at trial that could have potentially negated that harm, I am concerned that a harmless error analysis here is somewhat problematic. However, despite my concerns, our holding in *Jackson, supra,* dictates that a harmless error analysis in this case is appropriate.

DECIDED JUNE 30, 2008.

*J. Scott Key,* for appellant.

*Paul L. Howard, Jr.,* District Attorney, *Christopher M. Quinn, Bettieanne C. Hart,* Assistant District Attorneys, *Thurbert E. Baker,* Attorney General, *Sheila E. Gallow,* Assistant Attorney General, for appellee.